UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JESSICA MAYHEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00285-SDN |
| | ) | |
| IDEXX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER ON MOTION TO DISMISS</u>**

Defendant IDEXX Laboratories, Inc. ("IDEXX") moves to dismiss (ECF No. 26) Plaintiff Jessica Mayhew's six-count amended complaint (ECF No. 24) pursuant to Fed. R. Civ. P. 12(b)(6). Mayhew's amended complaint alleges IDEXX violated Title VII of the Civil Rights Act of 1964, the Maine Human Rights Act ("MHRA"), and the Maine Whistleblower Protection Act ("MWPA") by discriminating against her because of her gender, creating a hostile and abusive workplace, and retaliating against her for opposing IDEXX's unlawful practices (ECF No. 24, ¶ 2). IDEXX argues Mayhew's amended complaint should be dismissed in its entirety because her claims are time-barred, she does not allege an adverse employment action, she has not pleaded enough facts to support a reasonable inference of a continuing violation, and she otherwise has failed to state a claim (ECF No. 26). For the reasons discussed below, IDEXX's motion to dismiss is GRANTED in part and DENIED in part.

I.      **Factual Background**

The Court draws the following facts from Mayhew's amended complaint (ECF No. 24), treats them as true, and draws all reasonable inferences in her favor for purposes of resolving IDEXX's motion to dismiss. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

IDEXX is the global leader in veterinary diagnostics, software, and microbiology testing. ECF No. 24, ¶ 4. IDEXX has its principal place of business and headquarters in Westbrook, Maine. *Id.* Mayhew began working at IDEXX as a product engineer on July 10, 2017 and performed her job duties satisfactorily. *Id.* ¶¶ 10–11.

Mayhew is disabled with post-traumatic stress disorder (PTSD) and panic disorder. *Id.* ¶ 13. She informed her first supervisor, Troy,[1] of her disabilities. *Id.* ¶ 14. After she did so, "male employees and supervisors took [their] knowledge of her disability as an invitation to harass her." *Id.* ¶ 15. In November of 2017, IDEXX planned a team building event at an escape room. *Id.* ¶ 16. Mayhew informed Troy that she was not comfortable participating in the escape room, where she would be grabbed or trapped, because of her PTSD. *Id.* at ¶¶ 16–17. Troy told Mayhew her job depended on the escape room event. *Id.* ¶ 17. Mayhew informed IDEXX's human resources department (HR) of this and Troy's failure to accommodate her disabilities. *Id.* ¶ 18.

Around the same time as the escape room event, Mayhew was going through a divorce. *Id.* ¶ 19. A colleague named Richard noticed Mayhew was not wearing her wedding ring and began to harass her. *Id.* ¶ 20. Richard invited Mayhew to happy hour, requested pictures of her in a bikini on vacation, and gifted her chocolates to "fatten" her up so she did not "look too good" in a bikini. *Id.* ¶ 21. Richard requested a ride home from Mayhew and another employee had to step in to protect her. *Id.* ¶ 22. Richard referred to Mayhew as his "sexy little mousey" and "simply irresistible." *Id.* ¶ 23. In a secluded, soundproof room Mayhew's job duties required her to work in, Richard told Mayhew he did not know how long he could "resist" her. *Id.* ¶ 24. This comment caused Mayhew to

---

[1] Mayhew uses only first names to refer to non-party IDEXX employees in her amended complaint, so I do the same.

suffer palpable fear of being raped at work. *Id.* ¶ 25. Richard demanded to "hug it out" after this comment. *Id.* ¶ 26. He proceeded to sniff Mayhew's neck and comment on her perfume. *Id.* At one point, Richard moved his workspace into Mayhew's. *Id.* ¶ 27. He cornered Mayhew in the lab, intensifying her fear of sexual assault in the workplace. *Id.* ¶ 28. Other employees talked about Mayhew and Richard, stating they were "rooting" for her. *Id.* ¶ 29. Female employees acknowledged that "every woman" at IDEXX had a story about Richard. *Id.* ¶ 30.

Mayhew reported Richard's sexual harassment to her boss, who threw up his hands and said, "Don't tell me anything I don't want to know!" *Id.* ¶ 31. Mayhew then reported Richard's behavior to HR in November of 2018. *Id.* ¶ 32. Many of Mayhew's coworkers discouraged her from reporting Richard's behavior. *Id.* ¶ 33. IDEXX investigated the complaint but dismissed it as a "he said she said" or "boys will be boys" scenario. *Id.* ¶ 34. IDEXX concluded its investigation into Richard's behavior in January of 2019. *Id.* ¶ 60. Richard continues to work in management at IDEXX. *Id.* ¶ 35.

In July of 2019, Mayhew began working on a new team at IDEXX; her manager on this team was Bev. *Id.* ¶ 36. Also assigned to her new team was a male employee named Blain, who was known for explosive, angry outbursts. *Id.* ¶¶ 36, 39. At one point, Blain made a joke about sexual harassment and Mayhew had to tell him to stop. *Id.* ¶ 37. A colleague told Mayhew that he had made a "pact" with Blain that if Blain went on a killing spree at work, Blain would "spare" the colleague, and that Mayhew should make the same "pact" with Blain. *Id.* ¶ 38. Mayhew tried to laugh it off and ignore the discussion. *Id.* ¶ 40. Mayhew's fear of Blain grew when he acknowledged getting "really angry" sometimes. *Id.* Blain has a history of threatening violence in the workplace at IDEXX. *Id.* ¶ 41.

"As the months wore on," Blain repeatedly displayed "explosive" anger, including when he shouted in a female colleague's face and then slammed a door so hard it broke the sheetrock, and swore and slammed his fists on tables. *Id.* ¶ 42. These outbursts continued without any apparent repercussions. *Id.* ¶ 43. In November of 2020, Blain acknowledged in a Microsoft Teams videoconferencing meeting that he was like an "abusive husband" at work. *Id.* ¶ 44. During this time, Mayhew's PTSD symptoms intensified. *Id.* ¶ 45.

In late 2020, Mayhew reported to HR that she felt unsafe around Blain. *Id.* ¶ 46. One or more of her coworkers echoed these concerns. *Id.* ¶ 47. Blain told a female colleague, Angela, in an email, "I'm going to fucking kill you." *Id.* ¶ 67. Blain joked about his anger problem and its impact on the workplace, stating, "You should see how thick my HR file is." *Id.* ¶ 68. Mayhew's manager acknowledged that IDEXX should not tolerate Blain's behavior. *Id.* ¶ 48. Blain's manager insisted that Blain's actions were taken in "anger," but not "violence." *Id.* ¶ 49. At his manager's insistence, HR decided not to penalize Blain for his actions. *Id.* Management suggested that Mayhew go back into the workplace at IDEXX,[2] essentially as bait, to gather more evidence against Blain. *Id.* ¶ 50. Mayhew's manager suggested that the other option was to sit down with Blain's manager and explain Mayhew's "female perspective" to him. *Id.* ¶ 51. Mayhew felt HR's investigation into Blain's conduct failed to correct gender discrimination again. *Id.* ¶ 52. Management also suggested Mayhew move to different projects to avoid Blain, which would negatively impact her career but not his. *Id.* ¶ 53.

---

[2] Although not explicitly stated in Mayhew's amended complaint, I infer from Mayhew's allegations that IDEXX employees were working remotely from spring 2020 through the first half of 2021 due to the COVID-19 pandemic. *See* ECF No. 24, ¶ 70 (referencing Blain not returning to the office until June of 2021 when "everyone" was scheduled to return to the office).

Another colleague, Amanda, made a complaint to HR about Blain and noted that Mayhew had similar issues with him. *Id.* ¶ 69. On February 3, 2021, Mayhew's manager, Bev, met with Mayhew and Amanda and assured them that Blain would not be allowed back in the building until June of 2021 when everyone would be returning to the office and that IDEXX would prevent Blain from returning to the office during this time for safety reasons. *Id.* ¶ 70. On February 10, 2021, Bev told Mayhew and Amanda about Blain's manager's "anger not violence" comment and that IDEXX "was giving Blain time and space to recover." *Id.* ¶ 71. Mayhew concluded from this communication that IDEXX was not going to take any substantive steps to address Blain's behavior. *Id.* Bev suggested Mayhew keep her phone camera ready to catch video of Blain's violent outbursts, indicating that HR was not going to do anything without video footage. *Id.* ¶ 73. Mayhew felt compelled to leave her employment on March 12, 2021. *Id.* ¶ 57.

Before the Maine Human Rights Commission (MHRC), IDEXX claimed that Richard (Mayhew's colleague who sexually harassed her) acknowledged Mayhew's concerns and showed "genuine remorse and regret" about his conduct. *Id.* ¶ 61. IDEXX claims it took the following remedial actions to rectify Richard's harassment of Mayhew: (1) IDEXX issued Richard a Final Performance Expectations Memo; (2) IDEXX removed Richard from his project management role; (3) IDEXX rated Richard as "Sometimes Meets Expectations" on his 2018 performance review; (4) IDEXX coded Richard as ineligible for his 2019 bonus and merit pay increase; (5) IDEXX instructed Richard to avoid all contact with Mayhew going forward and ensured that he was not placed on any projects with Mayhew; and (6) IDEXX required Richard to participate in additional harassment and respectful workplace training programs. *Id.* ¶ 61. Despite these representations, IDEXX did not shield Mayhew from having to work with Richard on

projects and Richard did not leave her alone. *Id.* ¶ 62. Mayhew reported to HR that Richard continued to have contact with her. For example, he would make snide comments to Mayhew in common areas of the IDEXX office. *Id.* ¶ 63. Mayhew's job duties required her to continue to work with Richard on a particular project after IDEXX investigated her sexual harassment complaint. *Id.* ¶ 64. To the extent IDEXX did prevent Richard from interacting with Mayhew, it did so by preventing Mayhew from working on projects Richard was assigned to, causing her to suffer professionally. *Id.* ¶ 65.

## II.    **Legal Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has pled a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

### III.    **Discussion**

### A.  **Statute of Limitations**

IDEXX moves to dismiss as untimely Mayhew's discrimination, hostile work environment, and retaliation claims to the extent those claims arise from Troy and Richard's conduct. ECF No. 26 at 7–10. Mayhew argues her claims are timely because IDEXX's alleged systemic failure to correct Richard and Blain's harassment constitutes a continuing violation. ECF No. 41 at 12–15. In response, IDEXX argues Mayhew has not pleaded a continuing violation because she has not alleged a specific policy or practice to support a systemic violation claim, the pre-limitations-date conduct is not sufficiently related to the post-limitations-date conduct to anchor the claim, and the timely allegations do not constitute sex-based discrimination. *See generally* ECF No. 42.

For Title VII claims to be timely, the employee alleging a violation must file an administrative claim with the appropriate state agency "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009). Claims under Maine antidiscrimination and whistleblower protection laws also are subject to an administrative exhaustion requirement and three-hundred-day limitation period. 5 M.R.S. §§ 4611, 4622(1); *see also Burnett v. Ocean Props., Ltd.*, 327 F.Supp.3d 198, 231–32 (D. Me. 2018). Mayhew filed her Complaint of Discrimination with the Maine Human Rights Commission (MHRC) on September 7, 2021. Ex. 1 to Resp. to Show Cause Order (ECF No 21-1).[3] Therefore, any claims based on unlawful employment practices Mayhew

---

[3] Generally, courts may not consider material beyond the complaint on a motion to dismiss without converting the motion into one for summary judgment. *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). There is a "narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for

alleges occurred before November 11, 2020 (three hundred days prior to her MHRC complaint) are untimely unless the practices constitute a continuing violation. *See* 42 U.S.C. § 2000e-5(e)(1); 5 M.R.S. § 4611; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120–21 (2002).

## B. **Continuing Violation**

The continuing violation doctrine is "an equitable exception to Title VII's statute of limitations, [that] 'allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is "some violation within the statute of limitations period that anchors the earlier claims."'" *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 474 (1st Cir. 2010) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001); *see also Morgan*, 536 U.S. at 117 (holding a plaintiff may seek damages for hostile work environment claims under Title VII that fall outside of the limitations period if "an act contributing to the claim occurs within the filing period"). The First Circuit has recognized two types of continuing violations: systemic violations and serial violations. *Thornton*, 587 F.3d at 33. Mayhew argues she has pleaded both types of continuing violations. *See* ECF No. 41 at 12–15.

---

documents sufficiently referred to in the complaint,'" however. *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). Here, the Complaint of Discrimination is central to Mayhew's claim because she was required to exhaust administrative remedies and it establishes the relevant date for timeliness purposes. *See Burnett v. Ocean Props., Ltd.*, 327 F.Supp.3d 198, 231–32 (D. Me. 2018). Additionally, Mayhew produced the Complaint of Discrimination in response to a Show Cause Order of this Court related to administrative exhaustion and timeliness. *See* Show Cause Order (ECF No. 19); Ex. 1 to Resp. to Show Cause Order (ECF No. 21-1). As such, I consider Mayhew's Complaint of Discrimination (ECF No. 21-1) as merged with the pleadings.

1. **Systemic Violation**

A systemic violation does not require a plaintiff to identify any single act of discrimination within the limitations period if the complained-of discriminatory policy was in effect during the statutory limitations period. *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 183–84 (1st Cir. 1989) ("[I]f a Title VII violation occurs in the wake of some continuing policy, itself illegal, then the law does not bar a suit aimed at the employer's dogged insistence upon that policy within the prescriptive period."). However, a "series of discrete discriminatory acts motivated by a discriminatory animus cannot be a systemic violation." *Megwinoff v. Banco Bilbao Vizcaya*, 233 F.3d 73, 76 (1st Cir. 2000). Rather, "[s]ystemic violations are said to arise from discriminatory policies (or what is a de facto policy in the form of a consistent, recurring practice). Systemic violations have been recognized rarely, usually in instances of a discriminatory promotion, hiring, training, or compensation system where direct evidence, statistics, or other evidence demonstrate the discriminatory effects of that policy." *Id.* To state a claim under the systemic violation theory, plaintiffs must identify the specific discriminatory policy or practice the plaintiff was subjected to. *See Thornton*, 587 F.3d at 33 ("[G]eneral references to some vague, undefined policy of discrimination are not . . . sufficient to make out a . . . showing that a discernible discriminatory policy was in effect." (quoting *Mack*, 871 F.2d at 184)).

Mayhew argues she has pleaded a systemic violation in the form of "an upper-level HR policy and/or practice of discriminating and retaliating against employees who raise complaints." ECF No. 41 at 13. To bolster her systemic violation theory, Mayhew requests the Court take judicial notice of the allegations in a proposed class action complaint filed in another case in this District against IDEXX. ECF No. 41 at 9-10. In that case, Plaintiff Jamie Cavanaugh has moved for leave to amend her complaint to add Mayhew and one

other former IDEXX employee as named plaintiffs and class representatives of a putative class of similarly situated individuals claiming sex discrimination against IDEXX under Title VII and the MHRA. *See generally* ECF No. 27-1.

Under Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed." Fed. R. Evid. 201(b). Courts "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). However, as Mayhew acknowledges, "there is a distinction between the existence of judicial records and the truth of the facts recorded, and while the court may take judicial notice that a pleading was filed and the filing contained certain allegations, the truth of these allegations and findings are not proper subjects of judicial notice." *Ortiz v. Sig Sauer, Inc.*, 596 F.Supp.3d 339, 358 (quoting *In re Synchronoss Sec. Litig.*, 705 F.Supp.2d 367, 390 n.35 (D.N.J. 2010)).

I take judicial notice of the proposed class action complaint, and, as such, the fact that Cavanaugh, Mayhew, and the other proposed class representative are seeking to bring their allegations of sex discrimination against IDEXX. I need not determine whether or not to take judicial notice of the *facts* of the class action complaint (and then take them as true on the Rule 12(b)(6) standard), because, in any event, Mayhew's allegations alone or as alleged by way of the class action are insufficient to plausibly raise a systemic violation in the form of an unlawful practice. Mayhew herself describes the alleged unlawful practice as "an upper-level HR policy and/or practice of discriminating and retaliating against employees who raise complaints." ECF No. 41 at 12. But the details of the alleged retaliation and discrimination differ widely between the women's claims. The departments, triggering events, responding supervisors, and alleged adverse

10

employment actions and outcomes identified in the allegations of the four women differ from each other in significant ways, and the Court cannot glean a *specific* unlawful practice from these allegations, as is required to establish a systemic violation. *See Lawton v. State Mut. Life Assur. Co. of Am.*, 101 F.3d 218, 222 (1st Cir. 1996) (plaintiffs claiming systemic violations must articulate a discriminatory policy or practice with particularity); *Thornton*, 587 F.3d at 33 (explaining "[g]eneral references to some vague, undefined policy of discrimination" do not suffice (quoting *Mack*, 871 F.2d at 184)). Mayhew's allegations either alone or in combination with the class action fail to state a claim of an unlawful, systemic policy.

## 2. **Serial Violation**

The "classic example" of a continuing serial violation is a hostile work environment claim. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009). Hostile work environment claims arise out of the cumulative effects of individual acts of harassment, each of which on its own may not be actionable. *Morgan*, 536 U.S. at 115. The unlawful employment practice "cannot be said to occur on any particular day"; rather, the series of individual acts combine to constitute the unlawful employment practice. *Id.* at 115–17. For a hostile work environment claim to be timely, the claim must be filed within the statutory period for a claim arising from any act that is part of the hostile work environment. *Id.* at 118. "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120. Three factors help determine whether the acts complained of are part of the same actionable hostile work environment practice: "1) whether the within and without statute of limitations harassment involve 'the same type of employment actions'; 2) whether they occurred

'relatively frequently'; and 3) whether they were 'perpetrated by the same managers.'" *Randall v. Potter*, 366 F.Supp.2d 104, 116 (D. Me. 2005) (quoting *Morgan*, 536 U.S. at 120). Analysis of these factors helps courts determine if "a number of discriminatory acts emanat[e] from the same discriminatory animus." *See Tourangeau v. Nappi Distribs.*, 648 F.Supp.3d 133, 212 (D. Me. 2022) (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 53 (1st Cir. 1999)). Mayhew argues that the entirety of her allegations stemming from the conduct of Troy, Richard, and Blain constitute a single continuing violation. Out of all her allegations, only some of the allegations related to Blain's conduct fall within the statutory limitations period.

Before proceeding to consideration of the factors applied to this case, I reiterate that those allegations that occurred before November 11, 2020, fall outside the statute of limitations period. Although the exact timing of many of Mayhew's allegations is unclear, I draw all reasonable timing inferences in her favor. All allegations related to Troy occurred in 2017 and fall outside the statutory limitations period, which Mayhew does not dispute. Mayhew's allegations related to Richard's conduct appear to run from late 2017 through January of 2019 when HR concluded its investigation. *See* ECF No. 24, ¶¶ 16, 19, 60. Mayhew alleges that after the HR investigation into Richard concluded, IDEXX did not shield her from having to work with Richard, he did not leave her alone and he continued to make snide comments to her in office common areas (which she reported to HR), she had to continue working on a project with him, and IDEXX removed her from projects to avoid him to her professional detriment. *Id.* ¶¶ 62–65. Although these allegations are undated, Mayhew alleges she began working on a different team within the company in July of 2019. *Id.* ¶ 36. Further, she alleges IDEXX employees were working remotely, presumably due to the COVID-19 pandemic, until June of 2021. *See id.*

¶ 70. From these allegations, I infer that Mayhew did not work on projects with Richard after she moved teams in July of 2019, and that she did not have collateral contact with Richard in office common areas after spring of 2020, when employees began working remotely due to COVID-19. Accordingly, all of Mayhew's allegations relating to Richard are outside the statutory period. Mayhew alleges she reported to HR that she felt unsafe around Blain after he made a comment about being like an abusive husband at work in "November 2020." *Id.* ¶¶ 44, 46. Drawing reasonable inferences in Mayhew's favor, I consider these and all allegations subsequent in time as within the statutory limitations period, which began November 11, 2020.

Turning now to the factors outlined in *Randall* to determine whether the acts complained of are part of the same actionable hostile work environment practice, I first consider whether all the allegations together constitute single continuing violation. The first factor requires examining "whether the within and without statute of limitations harassment involve 'the same type of employment actions.'" *Randall*, 366 F.Supp.2d at 116 (quoting *Morgan*, 536 U.S. at 120). According to Mayhew, she informed her supervisor Troy that she was not comfortable participating in the escape room activity because of her PTSD, and he told her that her job depended on her participation, and she reported this to HR. ECF No. 24, ¶¶ 13–18. Richard sexually harassed her at work, she reported his harassment to her boss and was ignored, she reported his harassment to HR, and after HR's intervention was complete, Richard still harassed her in common areas of the office. *Id.* ¶¶ 20–35, 60–65. Regarding Blain, Mayhew alleges she witnessed his aggressive and violent behavior and comments, reported his behavior to HR along with another female colleague, and HR decided not to penalize Blain and encouraged her to

get cell phone video coverage of his behavior if he repeated it in her presence. *Id.* ¶¶ 36–53, 69–73.

The second factor is the relative frequency of the of the alleged unlawful employment actions. *Randall*, 366 F.Supp.2d at 116. It is difficult to determine the relative frequency of any of the alleged unlawful conduct because most of Mayhew's allegations are undated. Nonetheless, because I must draw reasonable inferences in her favor, I infer that the conduct occurred with a sufficient level of frequency within the time periods established by the allegations (Richard's conduct ran from late 2017 to spring 2020, Blain's conduct ran from July 2019 to Mayhew's resignation in March of 2021) to state a claim.

The third factor is whether the same managers perpetrated the alleged unlawful employment actions. *Id.* Mayhew worked on different teams within IDEXX during the time of Richard's conduct and the time of Blain's conduct. *See* ECF No. 24, ¶ 36. She reported Richard's conduct and Blain's conduct to different supervisors. *See id.* ¶¶ 31, 70. She reported both Richard's conduct and Blain's conduct to HR. *See id.* ¶¶ 32, 46.

Some aspects of the factors weigh in favor of finding a continuing violation for all of the allegations related to Troy, Richard, and Blain. For example, the harassment occurred with presumably sufficient relative frequency, HR was involved in all of Mayhew's reports, and HR allegedly inadequately responded to all Mayhew's reports. Nonetheless, I do not find the allegations sufficient to conclude that Troy and Richard's conduct and IDEXX's response thereto and Blain's conduct and IDEXX's response thereto "emanat[e] from the same discriminatory animus." *See Tourangeau*, 648 F.Supp.3d at 212 (quoting *Thomas*, 183 F.3d at 53). Troy's disability discrimination and Richard's overtly sexual comments differ in kind from Blain's violent and aggressive

comments and behavior. Mayhew reported these incidents to two different supervisors. She worked on two different teams at IDEXX, with the only possible overlapping of Richard's and Blain's conduct having occurred during collateral contact with Richard in common areas after Mayhew moved teams in July of 2019. Further, any contact she would have had with Richard in the office would have ended in spring of 2020 when the company transitioned to remote work, which is outside the statutory limitations period. None of Mayhew's allegations related to Richard happened during the statutory period, and the allegations between those related to Richard and those related to Blain are too dissimilar for the Court to conclude the alleged unlawful employment practices emanated from the same discriminatory animus. As such, I do not find the allegations arising from Troy and Richard's conduct are part of a continuing violation with those arising from Blain's conduct, and because Mayhew's claims arising from Troy and Richard's conduct are outside the statutory limitations period, those claims are dismissed.

Having determined that Mayhew's allegations arising out of Troy, Richard, and Blain's conduct do not constitute a single continuing violation, I now turn to whether Mayhew's allegations arising from Blain's pre-and-post statutory limitation date conduct constitutes a single continuing violation. As to the allegations related to Blain's conduct, the factors favor that I consider the allegations within and beyond the statutory limitation date as part of the same continuing violation. Blain's violent and aggressive outbursts with overtones of gender-based violence had a consistent "theme," making them plausibly the "same type of employment actions." *Randall*, 366 F.Supp.2d at 116 (quoting *Morgan*, 536 U.S. at 120). Mayhew alleges Blain had these outbursts "repeatedly," ECF No. 24, ¶ 42, a sufficient level of frequency at this stage. *See Randall*, 366 F.Supp.2d at 116. Additionally, Mayhew alleges her manager, Bev, had multiple conversations with her about Blain's

behavior, which is enough at this stage to infer IDEXX's allegedly inadequate responses were "perpetrated by the same managers." *Randall*, 366 F.Supp.2d at 116 (quoting *Morgan*, 536 U.S. at 120). As such, due to the continuing nature of his violent and aggressive conduct, the involvement of the same managers, and the relative frequency of his conduct, I will consider the untimely allegations related to Blain as part of the same continuing violation as the timely allegations related to Blain.

### C. **Mayhew's Timely Claims**

IDEXX moves to dismiss all the timely claims in Mayhew's amended complaint on the merits, arguing she failed to plead 1) discrimination because of her sex, 2) an adverse employment action, or 3) a hostile work environment based on sex. ECF No. 26 at 11–18. I consider each count of Mayhew's amended complaint in turn.

### 1. **Hostile Work Environment**

Mayhew's first count for relief alleges IDEXX violated Title VII on a hostile work environment theory.[4] ECF No. 24 at 11–12. To properly plead a hostile work environment claim, Mayhew must allege sufficient facts to plausibly support the following elements:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

---

[4] Mayhew's fifth count alleges unlawful sex-based discrimination under the MHRA. ECF No. 24 at 15. To the extent she claims an unlawful hostile work environment under MHRA, this analysis also applies to that claim because hostile work environment claims under the MHRA are "concurrent with Title VII." *Roy v. Correct Care Sols.*, 914 F.3d 52, 62 (1st Cir. 2019) (quoting *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897)).

*O'Rourke*, 235 F.3d at 728. IDEXX does not dispute that Mayhew, a woman, is a member of a protected class.

IDEXX first argues that Mayhew has not pleaded facts that support an inference that Blain's conduct was directed at Mayhew because of her sex, and therefore she was not subject to unwelcome sexual harassment based upon sex. ECF No. 26 at 12–13. To determine whether Mayhew's amended complaint plausibly states that Blain's conduct was gender-based, the Court's task is to "examine the specific conduct alleged in order to determine whether improper gender bias c[an] be inferred." *Bodman v. Me. Dep't of Health & Hum. Servs.*, 720 F.Supp.2d 115, 121 (D. Me. 2010). Mayhew "'is not required to prove her entire case in her pleadings.' . . . [A]t this stage [she] need only state factual allegations that make it plausible that the harassment was based upon sex." *Id.* (quoting *May v. Schering Corp.,* Civ. No. 09–170–B–W, 2010 WL 377012, at *6 (D. Me. Jan. 26, 2010). Mayhew alleges that Blain made a joke about sexual harassment and Mayhew had to tell him to stop and that he made a comment in a Teams meeting about being an "abusive husband" at work. ECF No. 24, ¶¶ 37, 44. Viewing these comments in the light most favorable to Mayhew, the Court draws the reasonable inference that Blain's comments conveyed disdain for women by making light of sexual harassment and gender-based violence. When considered at this stage in combination with the allegations of Blain's violent and aggressive behavior, Mayhew has pleaded enough facts to make it plausible she was subject to unwelcome harassment because of her sex sufficient to survive IDEXX's motion to dismiss. *See O'Rourke*, 235 F.3d at 729 ("Evidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment.").

IDEXX next argues Mayhew has not pleaded sufficient facts to satisfy the fourth and fifth elements: that the harassment was severe and pervasive enough to alter the conditions of her employment by creating an abusive work environment, and that the sexually objectionable conduct was both objectively and subjectively offensive. ECF No. 26 at 13–15. "'There is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence' that she was subjected to a severely or pervasively hostile work environment." *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006) (quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003)). The Court looks to the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Id.* "'Subject to some policing at the outer bounds,' it is for the [factfinder] to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 19 (1st Cir. 2002) (quoting *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002)).

Here, Mayhew has pleaded sufficient facts to survive the motion to dismiss. The allegations of Blain's frequent violent and aggressive conduct, combined with his remarks tinged with overtones of gender-based violence, are sufficiently severe to state a plausible hostile work environment claim, all that is necessary at this stage. *See Schoendorf v. RTH Mech. Contractors, Inc.*, No. 12-cv-00179-GZS, 2012 WL 3229333, at *5 (D. Me. Aug. 6, 2012) (denying a motion to dismiss a hostile work environment claim where complaint alleged frequent sex-based degrading comments, including three specific degrading comments). As to the element requiring subjective and objective offensiveness, Mayhew

18

has alleged she was subjectively offended by Blain's conduct. Similarly, at this stage, it is plausibly objectively offensive to work with an angry, aggressive coworker who makes jokes about gender-based violence and mass shootings in the workplace. *Cf. Donovan v. Nappi Distribs.*, 703 F.Supp.3d 135, 265 (D. Me. 2023) (finding the objectively offensive element trial-worthy where plaintiff faced "crass, sexual jokes").

The sixth element of a hostile work environment claim is that "some basis for employer liability has been established." *O'Rourke*, 235 F.3d at 728. When a co-worker, rather than a supervisor, is the perpetrator of the harassment, "the employer is liable if it 'knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" *White v. N.H. Dep't of Corr.*, 221 F.3d 254, 261 (1st Cir. 2000) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir. 1997)). Mayhew alleges she reported Blain's behavior to HR and HR decided not to penalize Blain at the insistence of Blain's manager. ECF No. 24, ¶¶ 46, 49. IDEXX argues that it did take corrective action in response to Mayhew's HR report, as shown in its Statement of Position submitted to the MHRC during the MHRC's investigation of Mayhew's claims, referenced in Mayhew's amended complaint and attached to IDEXX's motion to dismiss. *See* ECF No. 42 at 4–6.

I need not decide whether it is appropriate to consider the Statement of Position, *see supra* note 3, because even if I did consider IDEXX's representations to the MHRC about its response to Mayhew's report to HR about Blain, the Statement of Position would not establish as a matter of law that IDEXX took "prompt and appropriate corrective action." *See White*, 221 F.3d at 254. At best, consideration of IDEXX's Statement of Position would create a factual dispute. The Court does not resolve factual disputes on a motion to dismiss. *See Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 394 F.Supp.2d 283,

286 (D. Me. 2005) (resolving factual disputes is "clearly outside the scope" of a motion to dismiss); *see also Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" (quoting *Twombly*, 550 U.S. at 556)). All that is required of Mayhew, at this stage, is to plead facts to plausibly allege some basis for employer liability. She has alleged she reported Blain's conduct to HR and HR's response was inadequate. ECF No. 24, ¶¶ 46, 49. Whether IDEXX's response was indeed prompt and appropriate is beyond the scope of the motion to dismiss inquiry. Mayhew has pleaded enough facts to establish the employer liability element to survive IDEXX's motion to dismiss.

Mayhew alleges IDEXX constructively discharged her due the hostile work environment, presenting a "'special wrinkle' that amounts to an additional prima facie element." *Landrau-Romero v. Banco Popular de P.R.*, 212 F.3d 607, 613 (1st Cir. 2000) (quoting *Sanchez v. P.R. Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994)). ECF No. 24, ¶ 57. "[T]he constructive discharge standard is more onerous than the hostile work environment standard." *Bodman*, 720 F.Supp.2d at 123. To survive IDEXX's motion to dismiss, Mayhew must plead facts that plausibly "show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." *Lee-Crespo v. Schering-Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir. 2003) (quoting *Marrero*, 304 F.3d at 28). This is an objective standard; Mayhew's "subjective perceptions do not govern." *Id.*

Here, the matter is even closer. However, I conclude Mayhew has pleaded enough facts to survive IDEXX's motion to dismiss. Although the Court is mindful that the constructive discharge standard is even more demanding than the hostile work

environment standard, it is plausible that Mayhew's working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Bodman*, 720 F.Supp.2d at 123 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). Mayhew alleges IDEXX forced her to work with Blain, who made jokes about gender-based violence and had violent, angry outbursts, and IDEXX failed to adequately respond. *See Pa. State Police*, 542 U.S. at 147 ("A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."); *Bodman*, 720 F.Supp.2d at 123–24 (allowing constructive discharge claim to go forward at motion to dismiss stage where plaintiff complained about harassing conduct but employer took few, if any, measures to protect her from harassment in the workplace); *Rios DaSilva v. One, Inc.*, 980 F.Supp.2d 148, 165 (D.P.R. 2013) (finding on a motion to dismiss "that it is to the jury to establish if the constructive discharge is the product of the alleged hostile work environment").

In sum, the Court DENIES IDEXX's motion to dismiss Mayhew's hostile work environment claim because Mayhew has pleaded sufficient facts to plausibly allege IDEXX is liable for a hostile work environment.

### 2. **Quid Pro Quo**

Count II of Mayhew's amended complaint claims IDEXX violated Title VII on a quid pro quo theory. ECF No. 24 at 12–13. IDEXX moves to dismiss this count because Mayhew has not alleged any facts to support a quid pro quo theory. ECF No. 26 at 19. Quid pro quo harassment "occurs when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply." *Lipsett v. Univ. of P.R.*, 864 F.2d 881,

897 (1st Cir. 1988). Mayhew has alleged no facts to support a quid pro quo theory. Accordingly, I GRANT IDEXX's motion to dismiss with respect to Count II.

### 3. **Disparate Treatment**

Count III of Mayhew's amended complaint claims IDEXX violated Title VII by discriminating against Mayhew because of her sex on a disparate treatment theory. ECF No. 24 at 13–14. To make out a prima facie case of sex discrimination, Mayhew's allegations plausibly must show: "(1) that she is a member of a protected class; (2) that she performed her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that she was treated differently from similarly situated men." *Berry v. City of S. Portland*, 525 F.Supp.2d 214, 228 (D. Me. 2007). IDEXX does not dispute that Mayhew is a member of a protected class and that she performed her job satisfactorily, rather, it argues Mayhew has not alleged an adverse employment action or that she was treated differently from similarly situated employees. ECF No. 26 at 15. As discussed above, the Court has determined Mayhew has pleaded enough facts to move forward on a constructive discharge theory, and constructive discharge constitutes an adverse employment action. *See Stratton v. Bentley Univ.*, 113 F.4th 25, 38–39 (1st Cir. 2024). Mayhew alleges she was treated disparately only in relation to Richard. Specifically, IDEXX transferred her off projects and assignments with Richard—to her detriment—but allowed Richard to stay on projects and assignments. *See* ECF No. 24, ¶ 95. However, as explained above, Mayhew's allegations related to Richard are untimely, and she has not alleged disparate treatment related to Blain or any other employee. Accordingly, I GRANT IDEXX's motion to dismiss with respect to Count III.

### 4. **Retaliation Claims**

Counts IV and VI of Mayhew's amended complaint allege violations of Title VII's anti-retaliation provision and the MWPA. ECF No. 24 at 14-16. The elements of each claim are the same: Mayhew must allege that "(1) [sh]e engaged in protected conduct under [the relevant statute]; (2) [s]he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998) (elements of a prima facie case of retaliation under Title VII); *accord Walsh v. Town of Millinocket*, 2011 ME 99, ¶ 24, 28 A.3d 610 (elements of prima facie case of retaliation under the MWPA). Protected conduct under both statutes includes reporting conduct the employee has reasonable cause to believe is unlawful. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."); 26 M.R.S. § 833(1)(A) ("No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because . . . [t]he employee, acting in good faith . . . reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States . . . ."). Mayhew alleges she reported feeling unsafe around Blain to HR. ECF No. 24, ¶ 46. The Court has determined Mayhew's allegations regarding Blain's conduct are sufficient to move forward on her unlawful hostile work environment claim, so she has alleged enough to satisfy the "protected conduct" element. The Court has also already determined Mayhew has met the bare minimum pleading standard to allege an adverse

employment action in the form of a constructive discharge. As to causation, Mayhew's allegations that her complaint was not taken seriously leading to a continued hostile work environment that was so intolerable she was constructively discharged are enough to allege causation sufficient to survive IDEXX's motion to dismiss. Therefore, the Court DENIES IDEXX's motion to dismiss Counts IV and VI.

### 5. **MHRA**

Count V of Mayhew's amended complaint alleges unlawful sex-based discrimination in violation of the MHRA. ECF No. 24 at 15. This claim survives IDEXX's motion to dismiss on hostile work environment and retaliation theories, but is dismissed on quid pro quo and disparate treatment theories because claims under the MHRA are "concurrent with Title VII." *Roy v. Correct Care Sols.*, 914 F.3d 52, 62 (1st Cir. 2019) (quoting *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897)).

### IV.    **Conclusion**

IDEXX's motion to dismiss is GRANTED as to any alleged liability for Troy and Richard's conduct because those claims are untimely and do not constitute a continuing violation. IDEXX's motion to dismiss is DENIED as to Count I, the hostile work environment claim, because the Court concludes Mayhew has pleaded sufficient facts to survive the motion to dismiss. IDEXX's motion to dismiss is GRANTED as to Count II because Mayhew did not plead any facts supporting a quid pro quo harassment theory. IDEXX's motion to dismiss is GRANTED as to Count III because Mayhew did not plead any timely facts that would support a finding of disparate treatment. IDEXX's motion to dismiss is DENIED as to Counts IV and VI because Mayhew has pleaded sufficient facts to support her retaliation claims. IDEXX's motion is GRANTED as to Count V for quid

pro quo and disparate treatment theories of liability, but is DENIED as to Count V for hostile work environment and retaliation theories of liability.

**SO ORDERED.**

Dated this 18th day of July, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**